## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MALACHI WOODIWISS, TYLER BENNETT, ERIC PATTON, AIMEN HALIM, AND ASHIA JONES, on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BERKSHIRE BLANKET & HOME COMPANY, INC., | |
| Defendant. | |

Plaintiffs Malachi Woodiwiss, Tyler Bennett, Eric Patton, Aimen Halim, and Ashia Jones ("Plaintiffs"), by and through their attorneys of record, upon personal knowledge as to his own acts and experiences, and upon information and belief as to all other matters, file this complaint against Berkshire Blanket & Home Company, Inc. ("Berkshire" or "Defendant") and allege the following:

### INTRODUCTION

1. This is a proposed class action against Berkshire for misleading consumers through its marketing and packaging about the environmental impact of its so-called "EcoSoft Blanket," including misleading claims related to water usage and an "eco thread dry dye" process.

2. In recent years, consumers have become increasingly concerned about using products that are cleaner and safer for humans, animals, and the environment. As a result, consumers are demanding products that are made from more natural ingredients and are environmentally sounder, including products that cause less harm to the environment through the product's materials,

1

manufacture, use, or disposal.  Indeed, consumers have poured billions of dollars into the "ecofriendly" and "natural" products market.

3. In a recent report, researchers found that members of "Generation Z" (people born between roughly 1996 and 2010) are more likely to spend money on companies and brands seen to be environmentally ethical.[1]  Another report, Nielson's Global Corporate Sustainability Report, found that 66% of consumers would spend more on a product if it comes from a sustainable brand, and that jumps to 73% among millennials.  Therefore, companies have a financial incentive to be more environmentally conscious, or at least appear to be.[2]

4. This consumer movement toward environmentally friendly products is generally called the "green" movement.  Some companies, like Defendant, deceptively market their products as environmentally friendly to profit off this growing green movement without actually going green. This is known as "greenwashing." "Greenwashing" generally describes the act of companies misleading consumers regarding the company's environmental practices or the environmental benefits of its products or services. Greenwashers do not make notable efforts toward an environmentally friendly marketplace, certainly not to the extent that they frequently claim.[3]

5. Defendant Berkshire markets and labels its EcoSoft Blanket as "EcoSoft," "for the planet," and as using "half the water."  These representations lead consumers to believe the blanket is a "green" product that has a less harmful impact on the environment because of its ingredients, manufacture, use, or disposal.

---

[1] https://earth.org/what-is-greenwashing/.
[2] *Id.*
[3] https://www.businessnewsdaily.com/10946-greenwashing.html.

6. Unfortunately for consumers, these representations by Defendant are false. The EcoSoft Blanket is made from 100% polyester, a synthetic fiber that is inherently harmful to the environment through its use, manufacture, and disposal.

7. Plaintiffs on behalf of themselves and a Class and Subclasses of similarly situated individuals, bring this class action to end Defendant's deceptive practice and to recover damages from Defendant's deception.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the Class and Subclasses exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between Plaintiffs, who, as alleged below, are citizens of different states that Defendant.

9. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(1) and (2). Defendant is headquartered in this District and substantial acts in furtherance of the alleged improper conduct occurred within this District.

## PARTIES

10. **Plaintiff** Malachi Woodiwiss is a resident and citizen of Meridian, Idaho. Mr. Woodiwiss purchased the EcoSoft Blanket in a Costco store in or around March 2022.

11. **Plaintiff** Tyler Bennett is a resident and citizen of Belleville, Illinois. Mr. Bennett purchased the EcoSoft Blanket in a Costco in or around September 2022.

12. **Plaintiff** Eric Patton is a resident and citizen of Old Hickory, Tennessee. Mr. Patton purchased the EcoSoft Blanket in a Costco in or around December 2021.

13. **Plaintiff** Ashia Jones is a resident and citizen of Crowley, Texas. Ms. Jones purchased the EcoSoft Blanket in a Costco in or around October 2022.

14. **Plaintiff** Aimen Halim is a resident and citizen of Chicago, Illinois. Mr. Halim purchased the EcoSoft Blanket in a Walmart in or around November 2022.

15. **Defendant** Berkshire Blanket & Home Company, Inc. is a citizen of Massachusetts, but sells its products both online, including directly from its website, www.berkshireblanket.com, through online retailers like Amazon, and in big box stores, including Costco and Walmart, nationwide. Defendant offers a variety of products including throw blankets, bed sheets and other bedding options, heated blankets, and loungewear. Defendant also offers an "Eco-Friendly" blanket line. The "Eco-Friendly" line is marketed as including options for organic styles, natural fibers, recycled styles, and EcoThread (dry dye).[4]

16. Defendant provides additional information on its "Recycled Styles" and its "EcoThread" (dry dye) lines. It touts its Recycled Styles as purportedly "eco-conscious" plush blankets, throws and sheets. Defendant states that "[b]y spinning plastic bottles into recycled fabric, this new collection helps remove waste from oceans and landfills while also creating incredible soft, stylish, and sustainable plush home goods for you and your family to enjoy." The Recycled Styles line is a collaboration with Berkshire Revive.[5]

17. Defendant represents that the EcoThread line has a "zero water dyeing process" and uses "50% less water" in production.[6] Defendant goes on to explain that the EcoThread line uses "absolutely zero water during the dyeing process—saving gallons of water without sacrificing on color or comfort for years to come."[7] Defendant also states that it "respect[s] and conserve[s] our

---

[4] https://berkshireblanket.com/pages/our-story.
[5] https://berkshireblanket.com/collections/recycled-collection-1
[6] https://berkshireblanket.com/collections/ecothread
[7] *Id.*

natural resources by limiting water usage."[8]   And finally, Berkshire leaves customers with the claim that "[Berkshire] made it better so you can feel better."[9]

18. In 2022, Berkshire's annual revenue was approximately $300 million.[10]

## FACTUAL ALLEGATIONS

### A.    The Green Movement and Greenwashing

19. In recent years, consumers have become significantly more aware and sensitive to their impact on the environment through the products they purchase and use.  As a result, a movement has developed demanding consumer products that contain natural ingredients and are less harmful to the environmental, *i.e.* that produce a lesser harm to the environment through the product's ingredients, manufacture, use, or disposal.  The term "Green" is commonly used to describe these products, and the environmental movement that led to them.

20. In response to consumers' desire for safe, clean, and natural products, some companies "greenwash" their products by deceptively claiming their products are safer or cleaner for the environment than they are or through other tricks, such as touting environmental impacts that cannot be quantified or by making claims that misdirect consumers from other, environmentally harmful features of the product.

21. Greenwashing refers to the "activities by a company or an organization that are intended to make people think that it is concerned about the environment, even if its real business practice actually harms the environment." Oxford English Dictionary.

22. Environmentalist Jay Westerveld coined the term "greenwashing" in 1986, in a critical essay inspired by the irony of the "save the towel" movement in hotels that had little impact beyond

---

[8] *Id.*
[9] *Id.*
[10] https://www.zippia.com/berkshire-blanket-home-careers-515344/revenue/

saving hotels money in laundry costs.  Hotels also used the "save the towel" movement to misdirect consumers away from the environmentally harmful activities the hotels were participating in, such as massively developing vulnerable areas and depleting natural resources on a large scale. The idea emerged in a period when fact-checking resources were limited and most consumers received their news primarily from television, radio, and print media.

23. Thus, greenwashing is not a new concept.  By way of further example, in the mid-'80s, the oil company Chevron commissioned a series of television and print ads to tout its environmental dedication.  But while the now-infamous "People Do" campaign ran, Chevron was actively violating the Clean Air Act and Clean Water Act and spilling oil into wildlife refuges.

24. Chevron was—and is—far from the only corporation making such claims, unfortunately.  In 1991, chemical company DuPont announced its double-hulled oil tankers with ads featuring marine animals prancing in chorus to Beethoven's "Ode to Joy."  It turned out the company was the largest corporate polluter in the U.S. that year.

25. Unfortunately for consumers, false environmental claims have grown along with the demand for green products.  In a released study, the environmental consulting group TerraChoice Environmental Marketing found that 98% of more than 2,000 products it surveyed in North America made false and misleading environmental claims by committing one or more of what it classified as the "Seven Sins of Greenwashing"[11]:

    a.  The Sin of the Hidden Trade-off – committed by suggesting a product is "green" based on an unreasonably narrow set of attributes without attention to other important environmental issues;

---

[11] https://www.ul.com/insights/sins-greenwashing.

b. The Sin of No Proof – committed by an environmental claim that cannot be substantiated by easily accessible supporting information or by a reliable third-party certification;

c. The Sin of Vagueness – committed by every claim that is so poorly defined or broad that its real meaning is likely to be misunderstood by the consumer;

d. The Sin of Irrelevance – committed by making an environmental claim that may be truthful but is unimportant or unhelpful for consumers seeking environmentally preferable products;

e. The Sin of Lesser of Two Evils – committed by claims that may be true within the product category but that risk distracting the consumer from the greater environmental impacts of the category as a whole;

f. The Sin of Fibbing – committed by making environmental claims that are simply false; and

g. The Sin of Worshipping False Labels – committed by a product that, through either words or images, gives the impression of third-party endorsement where no such endorsement actually exists or uses fake labels.

26. To put it plainly, these days some corporations, like Defendant, will do whatever it takes to appear environmentally conscious, safe, and clean.

27. Recognizing this problem, the United States Federal Trade Commission ("FTC") created "Green Guides" to help companies avoid making misleading and deceptive claims.[12]

---

[12] *See generally* 16 C.F.R. § 260—Guide for the User of Environmental Marketing Claims.

**B.      FTC Regulation of Greenwashing and the Green Guides**

28. Section 5 of the FTC Act prohibits deceptive acts and practices in or affecting commerce.  A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions.  FTC Policy Statement on Deception, 103 FTC 174 (1983).

29. In the context of environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence.  Such evidence consists of tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results.  Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true.[13]

30. According to the FTC, the following general principles apply to environmental marketing claims.[14]

      a. <u>Qualifications and Disclosures</u>: To prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable.  To make disclosures clear and prominent, marketers should use plain language and sufficiently large type, should place disclosures in close proximity to the qualified claim, and should avoid making inconsistent statements or using distracting elements that could undercut or contradict the disclosure.

---

[13] https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguides.pdf

[14] 16 C.F.R. § 260.3.

b. <u>Distinction Between Benefits of Product, Package, and Service:</u> Unless it is clear from the context, an environmental marketing claim should specify whether it refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service.  In general, if the environmental attribute applies to all but minor, incidental components of a product or package, the marketer need not qualify the claim to identify that fact.  However, there may be exceptions to this general principle.  For example, if a marketer makes an unqualified recyclable claim, and the presence of the incidental component significantly limits the ability to recycle the product, the claim would be deceptive.

    i. Example: A plastic package containing a new shower curtain is labeled "recyclable" without further elaboration.  Because the context of the claim does not make clear whether it refers to the plastic package or the shower curtain, the claim is deceptive if any part of either the package or the curtain, other than minor, incidental components, cannot be recycled.

c. <u>Overstatement of Environmental Attribute:</u> An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit.  Marketers should not state or imply environmental benefits if the benefits are negligible.

    i. Example: A trash bag is labeled "recyclable" without qualification.  Because trash bags ordinarily are not separated from other trash at the landfill or incinerator for recycling, they are highly unlikely to be used again for any purpose.  Even if the bag is technically capable of being recycled, the claim is deceptive since it asserts an environmental benefit where no meaningful benefit exists.

d. <u>Comparative Claims:</u> Comparative environmental marketing claims should be clear to avoid consumer confusion about the comparison.  Marketers should have substantiation for the comparison.

i.  Example: An advertiser notes that its glass bathroom tiles contain "20% more recycled content." Depending on the context, the claim could be a comparison either to the advertiser's immediately preceding product or to its competitors' products. The advertiser should have substantiation for both interpretations. Otherwise, the advertiser should make the basis for comparison clear, for example, by saying "20% more recycled content than our previous bathroom tiles."

e.  <u>Certifications and Seals of Approval</u>: It is deceptive to misrepresent, directly or by implication, that a product, package, or service has been endorsed or certified by an independent third party. A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit (see § 260.4) if the certification or seal does not convey the basis for the certification or seal, either through the name or some other means.

i.  Example: An advertisement for paint features a "GreenLogo" seal and the statement "GreenLogo for Environmental Excellence." This advertisement likely conveys that: (1) the GreenLogo seal is awarded by an independent, third-party certifier with appropriate expertise in evaluating the environmental attributes of paint; and (2) the product has far-reaching environmental benefits. If the paint manufacturer awarded the seal to its own product, and no independent, third-party certifier objectively evaluated the paint using independent standards, the claim would be deceptive.

f.  <u>Biodegradable Claims:</u> It is deceptive to misrepresent, directly or by implication, that a product or package is degradable, biodegradable, oxo-degradable, oxo-biodegradable, or photodegradable. A marketer making an unqualified degradable claim should have competent and reliable scientific evidence that the entire item will completely break down and return to nature within a reasonably short period of time after customary disposal.

i.  Example: A marketer advertises its trash bags using an unqualified "degradable" claim. The marketer relies on soil burial tests to show that the product will decompose in the presence of water and oxygen. Consumers, however, place trash bags into the solid waste stream, which customarily

terminates in incineration facilities or landfills where they will not degrade within one year.  The claim is, therefore, deceptive.

g.  <u>Free-Of Claims</u>: It is deceptive to misrepresent, directly or by implication, that a product, package, or service is free of, or does not contain or use, a substance.  A truthful claim that a product, package, or service is free of, or does not contain or use, a substance may be deceptive if: (1) the product, package, or service contains or uses substances that pose the same or similar environmental risks as the substance that is not present; or (2) the substance has not been associated with the product category.[15]

   i.  Example: A package of t-shirts is labeled "Shirts made with a chlorine-free bleaching process." The shirts, however, are bleached with a process that releases a reduced, but still significant, amount of the same harmful byproducts associated with chlorine bleaching.  The claim overstates the product's benefits because reasonable consumers likely would interpret it to mean that the product's manufacture does not cause any of the environmental risks posed by chlorine bleaching.

h.  <u>Non-Toxic Claims:</u> It is deceptive to misrepresent, directly or by implication, that a product, package, or service is non-toxic.  A non-toxic claim likely conveys that a product, package, or service is non-toxic both for humans and for the environment generally.  Therefore, marketers making non-toxic claims should have competent and reliable scientific evidence that the product, package, or service is non-toxic for humans and for the environment or should clearly and prominently qualify their claims to avoid deception.

   i.  Example: A marketer advertises a cleaning product as "essentially non-toxic" and "practically non-toxic."  The advertisement likely conveys that the product does not pose any risk to humans or the environment, including household pets.  If the cleaning product poses no risk to humans but is toxic to the environment, the claims would be deceptive.

---

[15] 16 C.F.R. § 260.9.

    i.  <u>Ozone-Safe Claims:</u> It is deceptive to misrepresent, directly or by implication, that a product, package, or service is safe for, or friendly to, the ozone layer or the atmosphere.

        i.  An aerosol air freshener is labeled "ozone-friendly." Some of the product's ingredients are volatile organic compounds (VOCs) that may cause smog by contributing to ground-level ozone formation. The claim likely conveys that the product is safe for the atmosphere as a whole, and, therefore, is deceptive.

    j.  <u>Recyclable Claims:</u> It is deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item.

        i.  Example: A nationally marketed plastic yogurt container displays the Resin Identification Code (RIC) (which consists of a design of arrows in a triangular shape 6 containing a number in the center and an abbreviation identifying the component plastic resin) on the front label of the container, in close proximity to the product name and logo. This conspicuous use of the RIC constitutes a recyclable claim. Unless recycling facilities for this container are available to a substantial majority of consumers or communities, the manufacturer should qualify the claim to disclose the limited availability of recycling programs.

31. The Green Guides also provide additional examples of marketing claims to "provide the Commission's views on how reasonable consumers likely interpret certain claims."[16] The FTC provided the following relevant examples:[17]

- The brand name "Eco-friendly" likely conveys that the product has far reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, the use of such a brand name is deceptive.

---

[16] 16 C.F.R. § 260.1(d).
[17] 16 C.F.R. § 260.1.

- A brand name like "Eco-safe" would be deceptive if, in the context of the product so named, it leads consumers to believe that the product has environmental benefits which cannot be substantiated by the manufacturer. The claim would not be deceptive if "Eco-Safe" were followed by clear and prominent qualifying language limiting the safety representation to a particular product attribute for which it could be substantiated, and provided that no other deceptive implications were created by the context.

- A product label contains an environmental seal, either in the form of a globe icon, or a globe icon with only the text "Earth Smart" around it. Either label is likely to convey to consumers that the product is environmentally superior to other products. If the manufacturer cannot substantiate this broad claim, the claim would be deceptive. The claims would not be deceptive if they were accompanied by clear and prominent qualifying language limiting the environmental superiority representation to the particular product attribute or attributes for which they could be substantiated, provided that no other deceptive implications were created by the context.

- A marketer states that its packaging is now "Greener than our previous packaging." The packaging weighs 15% less than previous packaging, but it is not recyclable, nor has it been improved in any other material respect. The claim is deceptive because reasonable consumers likely would interpret "Greener" in this context to mean that other significant environmental aspects of the packaging also are improved over previous packaging.

## C.    Consumers and Green Products

32. Consumers are regularly choosing more environmentally friendly products. In fact, some consumers are changing their buying behavior to reduce the impact of their consumption habits on the environment, choosing environment-friendly consumption behavior, often called green consumption.[18]

33. Consumers and investors increasingly care about a business's positive impact and will make decisions according to brand perceptions. In a 2019 CSR Survey conducted by Aflac, 77% of consumers felt motivated to make purchasing decisions from companies committed to making the world a better place and 73% of investors viewed these efforts as contributors to return on

---

[18] https://www.emerald.com/insight/content/doi/10.1108/RAUSP-08-2018-0070/full/html.

investment, and, in turn, often look favorably on companies with perceived social and environmental impact.

34. In 2021, GreenPrint's Business of Sustainability Index, found that 64% of Gen X consumers would spend more on a product if it comes from a sustainable brand, and that figure jumps to 75% among millennials.

35. Today, consumers across all generations—from Baby Boomers to Gen Z—are willing to spend more for sustainable products, and the percentages of consumers in those generations willing to pay more for sustainable products is growing.  Now, at least 90% of Gen X consumers said that they would be willing to spend an extra 10% or more for sustainable products.[19]

36. An international study of 20,000 customers by grocery brand giant Unilever found one in three (33%) people choose to buy from brands they believe are doing environmental good.[20]

37. A desire to help the environment is the primary reason consumers purchase sustainable products and brands.  Almost 30% say they want to improve the environment, with 23% wishing to reduce production waste, 22% wishing to reduce their carbon footprint, and 17% concerned with animal welfare.[21]  Consumers care about the environment and are purchasing environmentally sound products to support those interests.

38. Green labels and product marketing impact consumer buying decisions.  Marketing and labels allow consumers to make comparisons among products and services in the category and decide their preference.[22]  Indeed, labels make is easier for consumers to identify green products

---

[19] https://www.forbes.com/sites/gregpetro/2022/03/11/consumers-demand-sustainable-products-and-shopping-formats/?sh=551188856a06.
[20] https://theconversation.com/climate-explained-are-consumers-willing-to-pay-more-for-climate-friendly-products-146757
[21] *Id.*
[22] https://majorsustainability.smeal.psu.edu/green-labelling/

when they are shopping, reducing consumers' purchase time.  Consumers consider the information related to the environmental attributes of products that companies, like Defendant, put on their label and use that information to make a purchase decision.[23]  Thus, labels and green marketing tactics, like those used by Defendant, impact consumer buying behavior.

**D.    Defendant's Business Activities**

39. Defendant advertises and sells the Berkshire Life EcoSoft Blanket at big box retailers like Costco and Amazon, and also directly from its own website to consumers.  Below are some examples of the Blanket for sale:

40. Costco (online):



---

[23] https://www.ijstr.org/final-print/dec2019/The-Effect-Of-Green-Marketing-Strategy-On-Purchasing-Decisions-A-Review-Of-Previous-Research.pdf

41. <u>Costco (in-store):</u>



<u>Amazon:</u>



---

24 https://www.amazon.com/Berkshire-Life-EcoSoft-Queen-Blanket/dp/B08RP7N1KP/ref=sr_1_5?hvadid=241576375168&hvdev=c&hvlocphy=1019973&hvnetw=g&hvqmt=e&hvrand=16598106297169582535&hvtargid=kwd-3811918595&hydadcr=19801_10191065&keywords=berkshire+life+blanket&qid=1675804514&sr=8-5&ufe=app_do%3Aamzn1.fos.006c50ae-5d4c-4777-9bc0-4513d670b6bc

42. The packaging for the blanket includes representations such as "Eco" and "1% for the planet".  The blanket's packaging also includes the claim that its dye process uses "half the water".



43. On its own website, www.berkshireblanket.com, Defendant makes the following representations about its products in the "Eco-Thread" line.

---



---

26 https://berkshireblanket.com/collections/ecothread



## LASTING COLOR BEGINS AT THE FIBER'S CORE

**Superior materials are used from the start, reducing the resources needed to make our EcoThread™ fabric. Instead of traditional surface dyeing, our Eco Dry Dye Process™ infuses color into the core of the fiber.**



Fiber dyed with traditional surface dying



Fiber infused with the Eco Dry Dye Process™



1% of sales are donated to nonprofit organizations dedicated to protecting the environment.
www.onepercentfortheplanet.org



We made it better so you can feel better. These products are STANDARD 100 BY oeko-TEX® certified, meaning they are tested for harmful substances. Certified body name TESTEX AG

## ~ SHOP THE ECOTHREAD™ COLLECTION ~

[27].

---

[27] *Id.*

44. Many of the claims Defendant makes about its products and the EcoSoft Blanket, specifically, are—at best—misleading.

45. For example, Berkshire claims that manufacturing the blanket uses "half the water." This calls the question, "half of what?"  It is unclear whether this references half of the water of competitors, half the water it previously used, or some other half.  This could still be a substantial amount of water with significant environmental impact, yet Berkshire makes no attempt to substantiate its claim that the amount of water being used is somehow better for the environment.

46. Berkshire's marketing of the EcoSoft Blanket appears to be a part of a growing and highly concerning trend within its industry.  Recent data shows that many fashion brands and textile retailers, particularly, are guilty of greenwashing and exaggerating their sustainability credentials without disclosing supporting evidence.

47. Indeed, only 11% of textile and fashion brands publish their wastewater test results and only 25% of brands disclose the process of conducting water-related risk assessments in their supply chain.[28]

48. This is true, despite the fact that the fashion and textile industry is a well-known and major contributor to water pollution and one of the most water intensive industries on the planet.[29]

49. Despite Berkshire's "eco," "50% less water" and "for the planet" claims, Berkshire does not provide any information related to its water use to the public.

50. Moreover, Defendant is a micro plastic factory, as the EcoSoft Blanket is actually made of 100% polyester.[30]

---

[28] Fashion Transparency Index 2022 Edition, FASHION REVOLUTION, https://issuu.com/fashionrevolution/docs/fti_2022.
[29] Id.
[30] https://www.thecooldown.com/green-business/costco-greenwashing-berkshire-life-eco-soft-blankets/

51. Far from being an environmentally friendly fabric, polyester is a "synthetic fabric favored by fast-fashion brands because it is cheap to produce and incredibly durable—unlike a natural fabric like cotton, polyester does not break down over time."[31]

52. Polyester is also made out of fossil fuels and is terrible for the environment.[32]

53. There are currently tens of billions of pounds of such textiles sitting in American landfills, and the polyester items will take hundreds of years to decompose, at which time, the polyester items will release methane gas, contributing to the overheating of the planet.[33]

54. Additionally, synthetic materials, like polyester, nylon and acrylic, are known to shed microfibers when they are washed and dried. Such microfibers are typically too small to be filtered by water purification systems, and end up in wastewater, and ultimately into the ocean. Once in the ocean, the microfibers are harmful to marine life and ocean ecosystems.[34] Polyester and acrylic are estimated to be the largest source of primary and secondary microplastics in the ocean, accounting for 34.8% of the global total.[35] Microplastic fibers can be ingested by marine animals, which can have catastrophic effects on species and the entire marine ecosystem. Microplastic fibers can also absorb chemicals present in the water or in sewage sludge and may already contain chemicals added during the manufacturing phase of the materials.[36] Indeed, Berkshire does not disclose this problem to consumers and only 24% of brands, in total, disclose how they minimize

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] Fashion Transparency Index 2022 Edition, FASHION REVOLUTION, https://issuu.com/fashionrevolution/docs/fti_2022.
[36] *Id.*

the impacts of microfibers in the ocean, despite textiles being the largest source of microplastics in the ocean.[37]

55. Defendant's EcoSoft Blanket is almost certainly not recyclable, either.  Indeed, the technology for cost-effectively recycling polyester does not exist.  This means that it is nearly a guarantee that any polyester product consumers buy is 100% brand new polyester.[38]  The EcoSoft Blanket is no exception, and very likely contains all new polyester in each unit sold.

56. These facts flatly undermine Defendant's misrepresentations of its products, and itself, as environmentally friendly.

**E.     Consumers and the EcoSoft Blanket**

57. Consumers have been misled by Defendant's marketing and labeling of the EcoSoft Blanket.

58. After a social media post about the "greenwashing" claims related to the blanket, consumers made the following statements about the EcoSoft Blanket:

- "I would fully fall for this!"[39]
- "Thing is, it's hard to spot greenwashing if you're just being passive and just shopping in general." [40]
-  One consumer called the blanket's marketing "the most blatant greenwashing I think I've ever seen."[41]
- Another consumer took a video of the blanket at Costco and said "Define: Greenwashing."[42]

---

[37] *Id.*
[38] *Id.*
[39] https://www.thecooldown.com/green-business/costco-greenwashing-berkshire-life-eco-soft-blankets/.
[40] *Id.*
[41] https://www.msn.com/en-us/money/other/instagrammer-calls-out-costco-over-allegedly-blatant-greenwashing-tactics-it-s-not-even-recycled/ar-AA15h5kv?ocid=FinanceShimLayer
[42] https://www.tiktok.com/@sustainably_rosalie/video/7085788507339377963.

59. As alleged herein, each Plaintiff purchased the EcoSoft Blanket at a big-box retailer, either Walmart or Costco.

60. As seen in Paragraph 40 of this Complaint, each Plaintiff saw the same or substantially similar in-store version of the EcoSoft Blanket, which included the claims that the blanket "requires half the water," that it is "eco" and that it is "for the environment."

61. Each Plaintiff purchased the EcoSoft Blanket believing that each of these claims were true.

62. Had Plaintiffs known that the environmental benefits marketed by Defendant were partially- or wholly-untrue, Plaintiffs would not have bought the EcoSoft Blanket, or at the very least, paid less for the EcoSoft Blanket had they known the truth.

63. Overall, Defendant's marketing and labeling of the EcoSoft Blanket has misled consumers, including Plaintiffs, and consumers have been impacted and damaged by Defendant's greenwashing claims about the EcoSoft Blanket.

## CLASS ALLEGATIONS

64. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all others similar situated, as representative of the following Class and Subclasses:

**Nationwide Class:**

    All citizens of the United States who purchased a Berkshire Life EcoSoft Blanket.
**Illinois Subclass:**
    All citizens of Illinois who purchased a Berkshire Life EcoSoft Blanket.
**Idaho Subclass:**
    All citizens of Idaho who purchased a Berkshire Life EcoSoft Blanket.
**Texas Subclass:**
    All citizens of Texas who purchased a Berkshire Life EcoSoft Blanket.
**Tennessee Subclass:**
    All citizens of Tennessee who purchased a Berkshire Life EcoSoft Blanket.

65. Excluded from the Class and Subclasses are Defendant; its officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest in, is a parent or subsidiary of, or which is otherwise controlled by Defendant; and Defendant's affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assignees.  Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

66. Plaintiffs reserve the right to modify and/or amend the Class or Subclass definitions, including but not limited to creating additional subclasses, as necessary.

67. All members of the proposed Class and Subclasses are readily identifiable through Defendant's records.

68. **Numerosity.**  The members of the Class and Subclasses are so numerous that joinder of all members of the Class and Subclasses is impracticable.  Plaintiffs are informed and believe that the proposed Class and Subclasses include millions of people.  The precise number of Class and Subclass members is unknown to Plaintiffs but may be ascertained from Defendant's records.

69. **Commonality and Predominance.**  This action involves common questions of law and fact to the Plaintiffs and Class and Subclass members, which predominate over any questions only affecting individual Class and Subclass members.  These common legal and factual questions include, but are not limited to:

    a.  Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising and selling the EcoSoft Blanket;

    b.  Whether Defendant's conduct of advertising and selling the EcoSoft Blanket as "eco" when it is not constitutes an unfair method of competition, or unfair or deceptive act or practice in violation of its Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, the Illinois Consumer Fraud and

Deceptive Business Act; the Illinois Uniform Deceptive Trade Practices Act; the Texas Deceptive Trade Practices – Consumer Protection Act, the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. 47-18-109, et seq.; and the Idaho Consumer Protection Act, Idaho Code Ann. 48-601, et seq.;

c. Whether Defendant used deceptive representations and omissions in connection with the sale of the Blanket in violation of Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, the Illinois Consumer Fraud and Deceptive Business Act; the Illinois Uniform Deceptive Trade Practices Act; the Texas Deceptive Trade Practices – Consumer Protection Act, the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. 47-18-109, et seq.; and the Idaho Consumer Protection Act, Idaho Code Ann. 48-601, et seq.;

d. Whether Defendant represented the Blanket has characteristics or quantities that it do not have in violation of Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, the Illinois Consumer Fraud and Deceptive Business Act; the Illinois Uniform Deceptive Trade Practices Act; the Texas Deceptive Trade Practices – Consumer Protection Act, the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. 47-18-109, et seq.; and the Idaho Consumer Protection Act, the Idaho Code Ann. 48-601, et seq.;

e. Whether Defendant's advertisement of the Blanket with the intent not to sell it as advertised constituted Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, and violation of the Illinois Consumer Fraud and Deceptive Business Act; the Illinois Uniform Deceptive Trade Practices Act; the Texas Deceptive Trade Practices – Consumer Protection Act, the Tennessee

Consumer Protection Act of 1977, Tenn. Code Ann. 47-18-109, et seq.; and the Idaho Consumer Protection Act, Idaho Code Ann. 48-601, et seq.; the Massachusetts Consumer Protection Act;

f.  Whether Defendant's labeling and advertising of the Blanket constituted Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, and violation of the Illinois Consumer Fraud and Deceptive Business Act; the Illinois Uniform Deceptive Trade Practices Act; the Texas Deceptive Trade Practices – Consumer Protection Act, the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. 47-18-109, et seq.; and the Idaho Consumer Protection Act, Idaho Code Ann. 48-601, et seq.;

g.  Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising constituted Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, the Illinois Consumer Fraud and Deceptive Business Act; the Illinois Uniform Deceptive Trade Practices Act; the Texas Deceptive Trade Practices – Consumer Protection Act, the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. 47-18-109, et seq.; and the Idaho Consumer Protection Act, Idaho Code Ann. 48-601, et seq.;

h.  Whether Plaintiffs and the Class paid more money for the EcoSoft Blanket than they would have had Defendant not engaged in the misconduct described herein;

i.  Whether Defendant's conduct constituted breach of express warranty;

j.  Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief; and

k.  Whether Defendant was unjustly enriched by its unlawful conduct.

70. **Typicality.**  Defendant engaged in a common course of conduct giving rise to the claims asserted by Plaintiffs on behalf of themselves and the Class.  Defendant's unlawful, unfair, and/or fraudulent actions concerned the same business practices described herein irrespective of where they occurred or were experienced.  Individual questions, if any, are slight by comparison in both quality and quantity to the common questions that control this action.  Plaintiffs' and the Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

71. **Adequacy.**  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel experienced in complex consumer class action litigation and intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

72. **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Breach of Express Warranty**
*By All Plaintiffs Against Defendant*

73. Plaintiffs reassert the allegations set forth above and incorporate such allegations by reference herein.

74. Each of the named Plaintiffs bring this cause of action against Defendant on behalf of the Nationwide Class and, in the alternative, state subclasses based upon the states in which they purchased the EcoSoft Blanket.

75. The laws of the states in which Plaintiffs purchased the EcoSoft Blanket are substantially similar so as to warrant certification of a Nationwide Class or, in the alternative, the certification of state subclasses as to particular elements of Plaintiffs' breach of warranty claims.

76. Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain.  Such warranties can also be created based upon descriptions of the goods that are made as part of the basis of the bargain that the goods shall conform to the description.

77. Each of the Plaintiffs formed a contract with Defendant at the time they purchased the EcoSoft Blanket. The terms of that contract include the claims and affirmations of fact that Defendant made on the EcoSoft Blanket's packaging and through marketing and advertising, including the environmental claims described above and the very name of the product, "EcoSoft Blanket."

78. The marketing and advertising constitute express warranties and became a part of the basis of the bargain, and they are part of the standardized contracts between Plaintiffs and Class members on the one hand, and Defendant, on the other.

79. In addition, or in the alternative, to the formation of an express contract, Defendant made each of their above-described representations, including the environmental claims and name of the product as "EcoSoft Blanket," to induce Plaintiffs and Class members to rely on such representations.

80. Defendant's environmental claims were material, and Plaintiffs and Nationwide Class members did rely and were reasonable in relying upon such representations in making their purchases of the EcoSoft Blanket.

81. Defendant has breached its express warranties about the EcoSoft Blanket because the representations set forth herein, including the environmental claims, are false and misleading.

82. Defendant failed to ensure that the material representations it made—and continues to make—to consumers were true. As a result of this systemic failure of oversight to ensure the truthfulness of the representations of the product label and relevant marketing and advertising, consumers purchased the EcoSoft Blanket from a company that does not have the positive environmental impact that it claims to.

83. Defendant cannot make the environmental claims it does to consumers regarding its EcoSoft Blanket because it cannot verify whether those claims are accurate. Nor did Defendant enforce these promises through adequate oversight.  Accordingly, Defendant convinced consumers to purchase its EcoSoft Blanket product and ultimately charged consumers a price premium for express—but empty—promises.

84. Defendant breached its express warranties about the EcoSoft Blanket because the representations as set forth herein were false and misleading.

85. Plaintiffs and Nationwide Class members expected and would have been reasonable in expecting that Defendant's ensure the statements on the EcoSoft Blanket label and the relevant

marketing and advertising for the product were truthful regarding its environmental claims. However, Plaintiffs and Nationwide Class members have not received the benefit of their bargain, as it has been discovered that Defendant's environmental claims are false and misleading.

86. As a result of Defendant's breach of its express warranties, Plaintiffs and the Nationwide Class members were damaged in the amount of the price they purchased for the EcoSoft Blanket, or in an amount equal to the price premium that they paid when they purchased the EcoSoft Blanket, in an amount to be proven at trial.

87. Plaintiffs, on behalf of themselves and class members, pray for relief as set forth below.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Unjust Enrichment**
*By All Plaintiffs Against Defendant*

88. Plaintiffs reassert the allegations set forth above and incorporate such allegations by reference herein.

89. Plaintiffs bring this claim for unjust enrichment against Defendant in the alternative to their breach of express warranty claim.

90. Plaintiffs and Nationwide Class members conferred benefits on Defendant by purchasing the EcoSoft Blanket, including by paying a price premium for the EcoSoft Blanket.

91. Defendant has been unjustly enriched by retaining the revenues derived from Plaintiffs and the Nationwide Class members' purchases of the EcoSoft Blanket. Retention of the monies under these circumstances is unjust and inequitable because Defendant's labeling of the EcoSoft Blanket was misleading to consumers, which caused injuries to Plaintiffs and the Nationwide Class members because they would not have purchased or would have paid less for the EcoSoft Blanket if they had known the true facts regarding Defendant's environmental claims.

92. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the Nationwide Class members is unjust and inequitable, Plaintiffs and the Nationwide Class members seek return of all monies Defendant acquired from its unlawful conduct, including disgorgement of all profits and establishment of a constructive trust.

93. Therefore, Plaintiffs pray for relief as set forth below.

### THIRD CLAIM FOR RELIEF
**Fraud**
*By All Plaintiffs Against Defendant*

94. Plaintiffs repeat and reallege the allegations above as if fully set forth herein. Plaintiffs bring this claim individually and on behalf of the Nationwide Class for intentional misrepresentation and fraud under the common law.

95. Defendant made false and misleading environmental claims with its EcoSoft Blanket, including in its marketing and advertising.

96. The misrepresentations and omissions made by Defendant are material because Plaintiffs and the Class members relied—and continue to rely—on the representations made about the EcoSoft Blanket.

97. The misrepresentations and omissions Defendant made, upon which Plaintiffs and the Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class members to purchase the EcoSoft Blanket.

98. Plaintiffs and the Class members did not and could not have known that Defendant's environmental claims about the EcoSoft Blanket were wholly or partially untrue. Plaintiffs and the Class members would not have purchased Defendant's EcoSoft Blanket, or would have purchased the EcoSoft Blanket under different terms, had they known the true facts.

## FOURTH CLAIM FOR RELIEF
**Negligent Misrepresentation**
*By All Plaintiffs Against Defendant*

99. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

100. Defendant represented to Plaintiffs and the Class members that its EcoSoft Blanket was environmentally friendly, including that it "requires half the water," that it is "eco" and that it is "for the environment."

101. At the time Defendant made these representations, it knew or should have known that these representations were false or otherwise made without knowledge of their truth or veracity.

102. At a minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the EcoSoft Blanket.

103. The negligent misrepresentations and omissions Defendant made, upon which Plaintiffs and the Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiffs and the Class members to purchase the EcoSoft Blanket.

104. Plaintiffs and the Class members would not have purchased the EcoSoft Blanket, or would have purchased the EcoSoft Blanket under different terms, if the true facts had been known.

105. Defendant's negligent actions caused harm to Plaintiffs and the Class members, who are entitled to damages and other legal and equitable relief as a result.

## FIFTH CLAIM FOR RELIEF
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,
815 ILCS 505/1, *et seq.***
*By Plaintiffs Tyler Bennet and Aimen Halim
on Behalf of the Illinois Subclass Against Defendant*

106. Plaintiffs reassert the allegations set forth previously and incorporate such allegations by reference herein.

107. The Illinois Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

108. Defendant is a "person" as defined by 815 Ill. Comp. Stat. §§ 505/1(c).

109. Plaintiffs and Illinois Subclass Members are "consumers" as defined by 815 Ill. Comp. Stat. §§ 505/1(e).

110. Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

111. Defendant's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, included representing that the EcoSoft Blanket had the sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities, that the EcoSoft Blanket does not have.

112. Defendant also deceptively labeled the EcoSoft Blanket as "eco", "for the environment" and with similar claims identified above to confuse and deceive consumers.

113. By disseminating materially misleading and deceptive representations and statements throughout Illinois to consumers, including Plaintiffs and members of the Illinois Subclass, Defendant was likely to deceive reasonable consumers in violation of § 505.

114. Defendant's deceptive practices were specifically designed to induce reasonable consumers like Plaintiffs to purchase the EcoSoft Blanket.  Defendant's uniform, material representations and omissions regarding the EcoSoft Blanket were likely to deceive and did deceive consumers.  Defendant knew or should have known that its uniform representations, as alleged herein, were untrue or misleading.

115. Plaintiffs and the Illinois Subclass purchased the EcoSoft Blanket in reliance on the representations made by Defendant, as alleged herein. Defendant intended to mislead Plaintiffs and Illinois Subclass Members and to induce them to rely on its misrepresentations and omissions.

116. Defendant's unfair and deceptive practices and acts were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid. The resulting injury to Plaintiffs outweighed any benefits to consumers or to competition.

117. Defendant acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiffs and Illinois Subclass Members' rights.

118. Defendant continues to engage in the unlawful, unfair, and deceptive practices in violation of § 505.

119. Plaintiffs and members of the Illinois Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the EcoSoft Blanket that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiffs and Subclass members.

120. As a direct and proximate result of Defendant's unlawful conduct in violation of § 505, Plaintiffs and members of the Illinois Subclass are entitled to an order of this Court enjoining such future wrongful conduct, and requiring Defendant to disclose the true nature of its misrepresentations.

121. Plaintiffs and Illinois Subclass Members also seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
### Violation of Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510/2, *et seq.*
*By Plaintiffs Tyler Bennet and Aimen Halim*
*on Behalf of the Illinois Subclass Against Defendant*

122. The Illinois Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

123. Defendant is a "person" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

124. Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including by:

- Representing that goods or services have characteristics that they do not have;

- Representing that goods or services are of a particular standard, quality, or grade if they are of another;

- Advertising goods or services with intent not to sell them as advertised; and

- Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

125. Defendant's act of labeling the EcoSoft Blanket as "eco", "for the environment", and with other similar statement identified herein, when they are actually harmful to the environment, caused injuries to consumers and was unfair and deceptive because consumers did not receive products commensurate with the consumers' reasonable expectations.

126. Defendant's action of labeling the EcoSoft Blanket as "eco" and "for the environment" when they are actually harmful to the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the EcoSoft Blanket and

receiving a product of lesser standards than what they reasonably expected and bargained to receive.

127. Consumer could not avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the EcoSoft Blanket. Accordingly, the injuries Defendant caused outweigh any possible benefit conferred by Defendant's practices in manufacturing, marketing, and selling the EcoSoft Blanket.

128. Defendant's environmental claims were false, misleading, and unreasonable, and constituted unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

129. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

130. The unfair and deceptive practices and acts by Defendant described herein were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

131. Plaintiffs and the Illinois Subclass suffered injury in fact and lost money as a result of Defendant's unfair conduct. Plaintiffs and the Class paid an unwarranted premium for the EcoSoft Blanket, or otherwise bargained for a product they did not receive.

132. Plaintiffs and the Class would not have purchased the EcoSoft Blanket, would have paid substantially less for the EcoSoft Blanket, or purchased the EcoSoft Blanket under different terms, if they had known that the EcoSoft Blanket's advertising and labeling were deceptive.

133. As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiffs and Illinois Subclass Members have suffered and will continue to suffer injury and damages.

134. Plaintiffs and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**Violation of Texas' Deceptive Trade Practices – Consumer Protection Act,**
**Tex. Bus. Com. Code Ann. 17.41, *et seq.***
*By Plaintiff Aisha Jones*
*on Behalf of the Texas Subclass Against Defendant*

135. The Texas Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

136. Defendant is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3). 1044.

137. Plaintiff and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

138. Defendant advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

139. Defendant engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

- Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

- Representing that goods or services are of a particular standard, quality or grade, if they are of another;

- Advertising goods or services with intent not to sell them as advertised; and

- Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

140. Defendant's false environmental claims cause injuries to consumers and are unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

141. Defendant's false environmental claims cause injuries to consumers and are unfair and deceptive because consumers end up overpaying for the EcoSoft Blanket and receiving a product of lesser standards than what they reasonably expected and bargained to receive.

142. Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the EcoSoft Blanket. Accordingly, the injuries Defendant caused outweigh any possible benefit, if any exists, from the manufacturing of the EcoSoft Blanket.

143. Defendant's environmental claims regarding the EcoSoft Blanket are false, misleading, and unreasonable, and constitutes unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

144. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

145. The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Texas Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition, if any exist.

146. Defendant also engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3).  Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

147. Plaintiff and the Texas Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct.  Plaintiffs and the Class paid an unwarranted premium for the EcoSoft Blanket, or otherwise bargained for a product they did not receive.  Specifically, Plaintiffs and the Class paid for EcoSoft Blankets that did not meet the environmental representations set forth by Defendant.  Plaintiff and the Class would not have purchased the EcoSoft Blanket, would have paid less for the EcoSoft Blanket, or purchased the EcoSoft Blanket under different terms, if they had known that the EcoSoft Blanket's advertising and labeling were deceptive.

148. As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff and Texas Subclass Members have suffered and will continue to suffer injury and damages.

149. Plaintiffs and Texas Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorneys' fees.

**EIGHTH CLAIM FOR RELIEF**
**Violation of the Tennessee Consumer Protection Act of 1977,**
**Tenn. Code Ann. 47-18-109,** *et seq.*
*By Plaintiff Eric Jones*
*on Behalf of the Tennessee Subclass Against Defendant*

150. The Tennessee Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Tennessee Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

151. Defendant is a "person," as defined by Tenn. Code § 47-18-103(13). 1025.

152. Plaintiff and Tennessee Subclass Members are "consumers," as meant by Tenn. Code § 47-18-103(2). 1026.

153. Defendant advertised and sold "goods" or "services" in "consumer transaction[s]," as defined by Tenn. Code §§ 47-18-103(7), (18) & (19). 1027.

154. Defendant advertised, offered, or sold goods or services in Tennessee and engaged in trade or commerce directly or indirectly affecting the people of Tennessee, as defined by Tenn. Code §§ 47-18-103(7), (18) & (19).  Defendant's acts or practices affected the conduct of trade or commerce, under Tenn. Code § 47-18-104.

155. Defendant violated the following provisions of Tenn. Code § 47-18- 104(b):

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

- Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

- Advertising goods or services with intent not to sell them as advertised.

156. Defendant's action of labeling the EcoSoft Blanket in such a way that is contrary to facts causes injuries to consumers and is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

157. Defendant's false environmental claims cause injuries to consumers and are unfair and deceptive because consumers end up overpaying for the EcoSoft Blanket and receiving a product of lesser standards than what they reasonably expected and bargained to receive.

158. Consumers cannot avoid these injuries caused by Defendant's deceptive labeling and advertising of the EcoSoft Blanket.  Accordingly, the injuries Defendant caused outweigh any possible benefit, if any exists, from the manufacturing of the EcoSoft Blanket.

159. Defendant's representations are false, misleading, and unreasonable, and constitute unfair and deceptive conduct.  Defendant knew or should have known of its unfair and deceptive conduct.

160. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.  Defendant also intended to mislead Plaintiff and the Tennessee Subclass members and to induce them to rely on its misrepresentations and omissions.

161. Plaintiff and the Tennessee Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct.  Plaintiff and the Class paid an unwarranted premium for these EcoSoft Blanket, or otherwise bargained for a product they did not receive.  Specifically, Plaintiff and the Class paid for EcoSoft Blanket that did not conform to the environmental claims made by Defendant.

162. Plaintiff and the Class would not have purchased the EcoSoft Blanket, would have paid less for the EcoSoft Blanket, or purchased the EcoSoft Blanket under different terms, if they had known that the EcoSoft Blanket's advertising and labeling were deceptive.

163. The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.  These acts caused injury to Plaintiff and Tennessee Subclass Members that they could not reasonably avoid; this injury outweighed any benefits to consumers or to competition.

164. Defendant's "unfair" acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not

outweighed by countervailing benefits to consumers or to competition.  Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making, such as individual consumer analysis to determine whether the EcoSoft Blanket was environmentally friendly.

165. Defendant's misleading environmental claims had no countervailing benefit to consumers or to competition, or at least no benefit that outweighs the injury to consumers.

166. Defendant acted knowingly and its conduct present a continuing risk to Plaintiff and the Tennessee Subclass members.

167. As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff and Tennessee Subclass Members have suffered and will continue to suffer injury and damages.

168. Plaintiff and Tennessee Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorneys' fees.

<u>**NINTH CLAIM FOR RELIEF**</u>
**Violation of the Idaho Consumer Protection Act,**
**Idaho Code Ann. 48-601, *et seq.***
*By Plaintiff Malachi Woodiwiss*
*on Behalf of the Idaho Subclass Against Defendant*

169. The Idaho Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Idaho Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

170. Defendant and Plaintiff meet the definition of a "person," as defined by Idaho Code Ann. 48-602(1).

171. Defendant advertised, offered, or sold goods or services in Idaho and engaged in trade or commerce directly or indirectly affecting the people of Idaho, as defined by Idaho Code. Ann. 48-602(2).

172. Defendant violated the following provisions of Idaho Code Ann. 48-603:

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

- Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

- Advertising goods or services with intent not to sell them as advertised.

173. Defendant's action of labeling the EcoSoft Blanket in such a way that is contrary to facts causes injuries to consumers and is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

174. Defendant's false environmental claims cause injuries to consumers and are unfair and deceptive because consumers end up overpaying for the EcoSoft Blanket and receiving a product of lesser standards than what they reasonably expected and bargained to receive.

175. Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the EcoSoft Blanket.  Accordingly, the injuries Defendant caused outweigh any possible benefit, if any exists, from the manufacturing of the EcoSoft Blanket.

176. Defendant's representations were false, misleading, and unreasonable, and constitute unfair and deceptive conduct.  Defendant knew or should have known of its unfair and deceptive conduct.

177. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.  Defendant also intended to mislead Plaintiff and the Idaho Subclass members and induce them to rely on its misrepresentations and omissions.

178. Plaintiff and the Idaho Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct.  Plaintiff and the Idaho Subclass paid an unwarranted premium for these EcoSoft Blanket, or otherwise bargained for a product they did not receive. Specifically, Plaintiff and the Idaho Subclass paid for EcoSoft Blanket that did not conform to the environmental claims made by Defendant.

179. Plaintiff and the Idaho Subclass would not have purchased the EcoSoft Blanket, would have paid less for the EcoSoft Blanket, or purchased the EcoSoft Blanket under different terms, if they had known that the EcoSoft Blanket's advertising and labeling were deceptive.

180. The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiff and Idaho Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

181. Defendant's "unfair" acts and practices caused or were likely to cause injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.  Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making, such as individual consumer analysis to determine whether the EcoSoft Blanket was environmentally friendly.

182. Defendant's misleading environmental claims had no countervailing benefit to consumers or to competition, or at least no benefit that outweighs the injury to consumers.

183. Defendant acted knowingly and its conduct present a continuing risk to Plaintiff and the Idaho Subclass members.

184. As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff and Idaho Subclass Members have suffered and will continue to suffer injury and damages.

185. Plaintiff and Idaho Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment in their favor as follows:

a. Certification the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and an order that notice be provided to all Class Members;

b. Designation of Plaintiffs as representatives of the Class and Subclasses and the undersigned counsel, Zimmerman Reed LLP and the Johnson Firm, as Class Counsel;

c. An award of damages in an amount to be determined at trial or by this Court;

d. An order for injunctive relief, enjoining Defendant from engaging in the wrongful and unlawful acts described herein;

e. An award of statutory interest and penalties;

f. An award of costs and attorneys' fees; and

g. Such other relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demands a trial by jury of all issues so triable.

Dated: June 23, 2023

*/s/ Patrick J. Sheehan*
Patrick J. Sheehan, (BBO #639320)
**WHATLEY KALLAS LLP**
101 Federal Street
19th Floor
Boston, MA  02110
Telephone: (617) 203-8459
Facsimile: (800) 922-4851
psheehan@whatleykallas.com

Christopher D. Jennings (*pro hac vice* forthcoming)
Tyler B. Ewigleben (*pro hac vice* forthcoming)
**JOHNSON FIRM**
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com

Brian C. Gudmundson (*pro hac vice* forthcoming)
Rachel K. Tack (*pro hac vice* forthcoming)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
rachel.tack@zimmreed.com